UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RASHEID K. LOTT,

                    Petitioner,

    -vs-

THOMAS LaVALLEY, SUPERINTENDENT
CLINTON CORRECTIONAL FACILITY

               Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-00911T**

## I.   Introduction

Petitioner Rasheid K. Lott ("Petitioner"), through counsel, has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment, entered September 25, 2006, in New York State, Supreme Court, Erie County (Penny M. Wolfgang, J.), convicting him, after a jury trial, of attempted Murder in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 125.25(1); 20.00), Assault in the First Degree (Penal Law § 120.10(1), 20.00), Kidnaping in the Second Degree (Penal Law §§ 135.20, 20.00), Criminal Use of a Firearm in the First Degree (Penal Law § 265.09(1), Criminal Possession of a Weapon in the Second Degree

(Penal Law § 265.03),[1] and Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02(4)).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

### A.    The Events of December 20, 1998

On December 20, 1998, Andre Banks ("Banks" or "the victim") arranged to go to Daron Baldon's ("Baldon") home at 286 Chelsea Place in the City of Buffalo, New York, to do some electrical work. Trial Trans. [T.T.] 296.  Baldon and Petitioner picked Banks up in Baldon's vehicle.  T.T. 298.  Banks was a friend of Petitioner and Baldon, and had known both men for many years.  T.T. 290-292.  When they arrived at Baldon's home, Banks went to the front living room where a set of weights was located, and began to lift them.  T.T. 299.  After Banks finished lifting the weights, Baldon asked Banks if he wanted to buy a pair of Cartier-brand eyeglasses.  T.T. 302. As Banks tried them on, Baldon sprayed Banks in the face with mace. T.T. 302-303.   A  fight  ensued  between  Banks  and  Baldon  for approximately four to five minutes.  T.T. 303.  Baldon then asked Petitioner, who was sitting on the couch, if he was going to help, which he did.  T.T. 303-304, 326.  According to Banks, "[i]t was

---

[1]

On direct appeal, the Appellate Division, Fourth Department modified the judgment by reversing Petitioner's conviction for Criminal Possession of a Weapon in the Second Degree, and dismissed that count (count nine) of the indictment. As modified, the judgment was unanimously affirmed.  People v. Lott, 55 A.D.3d 1274 (4th Dep't 2008).

two against one, [he] was just fighting for [his] life." T.T. 304. As the three men fought, Baldon put a handcuff on one of Banks' wrists and ordered him to sit down. T.T. 305. Both Baldon and Petitioner displayed pistols. T.T. 305. Baldon's gun was chrome, and Petitioner's gun was black. T.T. 305-306. Baldon then ordered Banks to put on the other handcuff. T.T. 306. Banks feared for his life. T.T. 307. Baldon told Banks to "run [his] shit," which Banks understood to mean that he should empty his pockets. T.T. 309. Banks pretended to put the other handcuff on his wrist and then attempted, unsuccessfully, to jump out a first floor window of the home. T.T. 306, 309-310. Banks tried successfully a second time. Banks crashed through the window and landed on a truck that was parked in the driveway. T.T. 306, 311-313. Banks slid down onto the ground off the truck. While he was on the ground, Banks heard numerous gunshots, which sounded different from each other. T.T. 314, 315-316. Banks was shot six times. T.T. 315. Banks then crawled away from the truck and to a house next door to avoid being shot again. T.T. 316-317. On cross-examination, Banks testified that he saw Baldon and Petitioner at the window before he escaped. T.T. 384-385, 392.

A short time later, police arrived at the scene and Banks told Officer Michael Brown of the Buffalo Police Department ("BPD") that he had been shot by Baldon and Petitioner. T.T. 474. Banks was taken to the hospital. While he was there, he made statements to

Detective March Stambach of the BPD in which he described the events that had occurred at Baldon's home and identified Baldon and Petitioner as the individuals who had shot him.  T.T. 424.  He also told Detective Stambach that Petitioner had a .22 caliber gun and Baldon had a .45 caliber gun.  T.T. 425.  Later, police recovered four fired cartridge casings to a .22 caliber gun from the crime scene.  T.T. 447.  A handcuff box, one pair of silver handcuffs, a chemical spray box, a handcuff key, and one .45 caliber magazine with five live rounds of .45 caliber ammunition were also recovered by police from inside 286 Chelsea Place.  T.T. 415-417.  A bullet from a .22 caliber gun was also recovered from the victim's abdominal cavity.  T.T. 448-450, 501.  Dr. William H. Flynn, Jr. testified that he treated Banks at Erie County Medical Center on December 20, 1998.  Dr. Flynn testified that two of the victim's wounds were life-threatening and required immediate emergency medical intervention to save his life.  T.T. 495-498.

**B.   Petitioner's First Trial**

Under Indictment No. 99-0678-001, Petitioner was charged, along with co-defendant Baldon, with Attempted Murder in the Second Degree (Penal Law §§ 110.00, 20.00, 125.25(1)), Assault in the First Degree (Penal Law §§ 20.00, 120.10(1)), Kidnaping in the Second Degree (Penal Law §§ 20.00, 135.20), and Attempted Robbery in the First Degree (Penal Law §§ 110.00, 20.00, 160.15(2)).  Each defendant was also charged separately with Criminal Use of a

Firearm in the First Degree (Penal Law § 265.09(1)(a)), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03), and Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02).  Petitioner was tried separately from co-defendant Baldon, and was found guilty, after a jury trial, of all charges, except the attempted robbery count.  See Erie County Ind. No. 99-0678-001, dated April 15, 1999 at Resp't Ex. E.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, alleging deprivation of his right to counsel.  The Appellate Division, Fourth Department reversed his conviction and ordered a new trial.  The appellate court determined that a reasonable probability existed that the deprivation of counsel during pre-trial proceedings resulted in Petitioner's conviction and therefore ordered that he be restored to his status post-indictment.  People v. Lott, 23 A.D.3d 1088 (4th Dep't 2005).

### C.   Petitioner's Retrial

Subsequently, Petitioner was retried on the entire indictment, including the attempted robbery charge for which he had been acquitted at his first trial.  The results of the new trial were the same as the earlier trial, which resulted in Petitioner's conviction of all counts of the indictment, except the attempted robbery count.  T.T. 669-670.

### D.   Sentencing

On September 25, 2006, Petitioner was sentenced as a persistent violent felony offender to concurrent indeterminate terms of twenty-five years to life for each of the counts. Sentencing Mins. [S.M.] 7-8.

### E.   Direct Appeal

On March 10, 2008, Petitioner appealed his judgment of conviction on the following grounds: (1) ineffective assistance of trial counsel; (2) that the trial court improperly permitted the prosecutor to use Petitioner's former trial testimony against him; (3) that the evidence was legally insufficient, or, alternatively, that the verdict was against the weight of the evidence; (4) that the statements made by the victim to a detective were impermissible hearsay; (5) that the trial court's Sandoval ruling was improper; (6) that Petitioner was improperly adjudicated a persistent violent felony offender; and (7) that his sentence was harsh and excessive. See Resp't Ex. B.  On October 3, 2008, the Appellate Division, Fourth Department modified the judgment by reversing the count charging Criminal Possession in the Second Degree, and dismissed that count (count nine) of the indictment.  As modified, the judgment was unanimously affirmed.  People v. Lott, 55 A.D.3d 1274 (4th Dep't 2008) (Resp't Ex. B).  Leave to appeal was denied. People v. Lott, 11 N.Y.3d 898 (2008) (Resp't Ex. B).

**F.   Petitioner's Motion to Vacate**

On or about January 29, 2008, Petitioner filed a *pro se* motion, pursuant to N.Y. Crim. Proc. Law (C.P.L.) § 440.10, to vacate his judgment of conviction on the following grounds: (1) his retrial on the attempted robbery count violated double jeopardy; (2) that the proof relating to the attempted robbery count was barred under the doctrine of collateral estoppel; (3) ineffective assistance of counsel for failing to raise issues (1) and (2); and (4) that he was denied his right to a fair trial as a result of prosecutorial misconduct.  See Resp't Ex. D.  The Erie County Supreme Court denied the motion pursuant to C.P.L. § 440.10(2)(b), which bars claims that are appealable, pending appeal, or reviewable based on the record.  See Resp't Ex. D.

**G.   Petitioner's Motion for a Writ of Error Coram Nobis**

On or about September 15, 2009, Petitioner filed a motion for a writ of error coram nobis in the Appellate Division, Fourth Department, arguing that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on various grounds.  See Resp't Ex. E.  That motion was summarily denied.  See Resp't Ex. E.

**H.   The Habeas Corpus Petition**

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) he was denied his right to be free from double jeopardy; and (2) ineffective

assistance of counsel.  See Pet., Points One-Two (Dkt. No. 1);
Pet'r Reply Mem., Points One-Two (Dkt. No. 7).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act
("AEDPA"), a federal court may grant habeas relief to a state
prisoner only if a claim that was "adjudicated on the merits" in
state court "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," 28 U.S.C. § 2254(d)(1), or if it "was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding." § 2254(d)(2).  A state
court decision is "contrary to" clearly established federal law "if
the state court arrives at a conclusion opposite to that reached by
[the Supreme Court] on a question of law or if the state court
decides a case differently than [the Supreme Court] has on a set of
materially indistinguishable facts."  Williams v. Taylor, 529 U.S.
362, 413 (2000).  The phrase, "clearly established Federal law, as
determined by the Supreme Court of the United States," limits the
law governing a habeas petitioner's claims to the holdings (not
*dicta*) of the Supreme Court existing at the time of the relevant
state-court decision.  Williams, 529 U.S. at 412;  accord Sevencan

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540
U.S. 1197 (2004).

A state court decision is based on an "unreasonable
application" of Supreme Court precedent if it correctly identified
the governing legal rule, but applied it in an unreasonable manner
to the facts of a particular case. Williams, 529 U.S. at 413; see
also id. at 408-10.  "[A] federal habeas court is not empowered to
grant the writ just because, in its independent judgment, it would
have decided the federal law question differently." Aparicio v.
Artuz, 269 F.3d 78, 94 (2d Cir. 2001).  Rather, "[t]he state
court's application must reflect some additional increment of
incorrectness such that it may be said to be unreasonable." Id.
This increment "need not be great; otherwise, habeas relief would
be limited to state court decisions so far off the mark as to
suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100,
111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a
State court shall be presumed to be correct.  The [petitioner]
shall have the burden of rebutting the presumption of correctness
by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see
also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The
presumption of correctness is particularly important when reviewing
the trial court's assessment of witness credibility."), cert.
denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.   Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120.  The procedural

bar that gives rise to the finding that the claim should be deemed
exhausted works a forfeiture and precludes federal court litigation
of the merits of the claim absent a showing of cause for the
procedural default and prejudice resulting therefrom or by
demonstrating that failure to consider the claim will result in a
fundamental miscarriage of justice.  See Wainwright v. Sykes, 433
U.S. 72, 87-91 (1977).

## IV.   Petitioner's Claims

## 1.   Double Jeopardy Violation

Petitioner argues, as he did in his motion to vacate, that his
retrial on the count of attempted robbery in the first degree, for
which he had previously been acquitted at his first trial, violated
his constitutional right to be free from double jeopardy and
prejudiced his retrial on the remaining counts.  See Pet., Point
One.  As discussed below, this claim is unexhausted but deemed
exhausted and procedurally defaulted from habeas review.

Despite his general contention that he has exhausted all of
his state court remedies (see Pet. ¶ 8),[2] Petitioner has not

---

[2]

At ¶ 8 of the petition, Petitioner states, "[o]n November 13, 2009 the
Fourth Department denied the Writ of coram nobis thus, exhausting all of Mr.
Lott's State remedies."  Pet. ¶ 8.  However, this particular claim was never
raised in Petitioner's coram nobis application and, even if it had been, the
coram nobis proceeding is not the appropriate remedy for raising such a claim.
See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (the writ of error coram
nobis lies for the purpose of seeking to vacate an order determining an appeal
on the ground that the defendant was deprived of the effective assistance of
appellate counsel); see also Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)
("[A] petitioner cannot show exhaustion unless he has fairly presented to an
appropriate state court the same federal constitutional claim that he now urges
upon the federal courts.") (internal citations omitted)).

demonstrated that he has exhausted his state court remedies with respect to this particular claim.  Petitioner raised this claim in his motion to vacate; however, he failed to appeal the denial of that motion to the Appellate Division, Fourth Department.  Failure to do so renders the claim unexhausted for purposes of federal habeas review.  See Pesina v. Johnson, 913 F.2d 53 (2d Cir. 1990) ("[f]ailure to seek leave to appeal the denial of a § 440.10 motion to the Appellate Division constitutes failure to exhaust the claims raised in that motion.").  Petitioner's claim, however, must be deemed exhausted and procedurally defaulted because state review is no longer available to him.  Petitioner cannot again seek leave to appeal the claim.  See N.Y. Court Rules § 500.20.  Moreover, collateral review of the claim is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.[3]  Returning to state court to exhaust the claim by way of another CPL § 440.10 motion, therefore, would be futile.  See C.P.L. § 440.10(2)(c).

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to

---

[3]

The Court notes that, on direct appeal, Petitioner argued that he was denied his federal and state right to effective assistance of counsel when defense counsel failed to move to dismiss the attempted robbery charge upon which he had been previously acquitted an earlier trial.  See Pet'r. Br. on Appeal, Point I at Resp't Ex. B.  Petitioner did not, however, raise his double jeopardy claim as a stand-alone claim.

consider the claim will result in a fundamental miscarriage of justice. Murray, 477 U.S. at 492; Wainwright, 433 U.S. at 87-91. Petitioner has not specifically alleged cause and prejudice to overcome the procedural default; however, he does allege, as a stand-alone claim in the petition, ineffective assistance of counsel on the basis of failure to seek dismissal of the attempted robbery in the first degree charge of which he was acquitted at the first trial.   See Pet., Point Two.   A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  McCleskey v. Zant, 499 U.S. 467, 494 (1991);  United States v. Frady, 456 U.S. 152, 168 (1982).   In order to constitute cause though, counsel's ineffectiveness must itself rise to the level of a constitutional violation.   McCleskey, 499 U.S. at 494 ("Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.").   Here, Petitioner's stand-alone ineffective assistance of counsel claim is meritless (see Section "IV, 2" below). Consequently, he cannot establish "cause" to excuse the procedural default.   Because Petitioner cannot make such a showing, the Court need not consider prejudice.  See Murray, 477 U.S. at 496 (adhering to the cause and prejudice test "in the conjunctive") (quotation omitted).   Nor would the failure to consider Petitioner's double jeopardy claim result in a fundamental miscarriage of justice.  A "miscarriage of

justice occurs" only "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496 (1986);  see Sawyer v. Whitley, 505 U.S. 333, 336 (1992) (in order to show a fundamental miscarriage of justice, "one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty].").  In addition, errors that call into question the validity of the trial itself, such as where the defendant faced double jeopardy or was tried in violation of a federal statute, may constitute a miscarriage of justice. Washington v. James, 996 F.2d 1442, 1450 (2d Cir. 1993). Petitioner cannot avail himself of the "miscarriage of justice" exception insofar as he was acquitted of the attempted robbery count at his retrial.  Further, he does not allege that he is actually innocent of the crimes with which he was convicted of at his retrial.  Therefore, this claim is procedurally defaulted from habeas review and is dismissed in its entirety.

## 2.   Ineffective Assistance of Trial Counsel

Petitioner argues that he was denied effective assistance of trial counsel based upon counsel's failure to: (1) seek dismissal of the attempted robbery count of which he had been acquitted at his first trial;  and (2) challenge the prosecution's ballistic evidence.  See Pet., Point Two.  As discussed below, Petitioner's ineffective assistance of trial counsel claim is meritless.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. A reviewing court need not address the performance and prejudice aspects in any particular order, and if it is easier to resolve the claim based upon consideration of the prejudice prong first, the court is free to do so. Id. at 697.

**(A)   Failure to Seek Dismissal of the Attempted Robbery Count**

Petitioner contends, as he did on direct appeal, that he received ineffective assistance of trial counsel based upon trial counsel's failure to seek dismissal of the attempted robbery count

for which he had been acquitted at his first trial.  See Pet.,
Point Two.  Petitioner raised this claim on direct appeal, and the
Appellate Division, Fourth Department denied it on the merits.  See
Lott, 55 A.D.3d at 1275.  As discussed below, this claim is
meritless and provides no basis for habeas relief.

Here, the Court need not address the performance prong of
Strickland with respect to counsel's failure to seek dismissal of
the attempted robbery count because Petitioner cannot demonstrate
prejudice resulting from the alleged error because he was acquitted
of attempted robbery at his retrial.  Strickland, 466 U.S. at 697.
T.T. 669-670.  Furthermore, as a matter of state evidentiary law,
the Appellate Division, Fourth Department, determined, in rejecting
this claim on the merits, that the evidence presented at the
retrial with respect to the alleged attempted robbery count would
have been admissible even if the attempted robbery count had been
dismissed at Petitioner's retrial.  See Lott, 55 A.D.3d at 1275.
Accordingly, Petitioner cannot demonstrate prejudice under
Strickland.  The Court cannot find that the state court's
adjudication of this claim contravened or unreasonably applied
settled Supreme Court law.  This portion of Petitioner's
ineffective of assistance of counsel claim is therefore dismissed.

**(B)  Failure to Challenge the Prosecution's Ballistic Evidence**

Petitioner contends that he received ineffective assistance of
counsel because counsel failed to challenge the prosecution's

ballistic evidence.  Specifically, Petitioner claims that counsel
erred by failing to call a ballistics expert of his own that could
have demonstrated that there was only one shooter, to wit: Baldon.
See Pet., Point Two.  This claim is unexhausted because it is
raised for the first time in the instant habeas corpus proceeding.[4]
Nonetheless, the Court finds this claim meritless[5] and dismisses it
on that basis pursuant to 28 U.S.C. § 2254(b)(2).

It is well-settled that "[t]he decision not to call a
particular witness is typically a question of trial strategy that
appellate courts are ill-suited to second-guess."  Laurey v.
Graham, 596 F. Supp. 2d 743, 750 (W.D.N.Y. 2009)(quoting United
States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)); see
Strickland, 466 U.S. at 690 ("strategic choices made after thorough
investigation of law and facts relevant to plausible options are

---

[4]

Petitioner argues that this claim is exhausted because "lack of effective
assistance of counsel has been raised twice including the last [coram] nobis."
Pet'r Reply at 1.  However, ineffective assistance of counsel on this particular
basis was never raised in the state courts, nor was this particular claim raised
in Petitioner's coram nobis application.  In any event, even if Petitioner had
raised this claim in his coram nobis application, that would not have exhausted
it for federal habeas review purposes.  See Turner, 262 F.3d at 123; see also
Klein, 667 F.2d at 282.

[5]

The Second Circuit has not yet established a standard for denying
unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New
York have applied the "patently frivolous" test for dismissing such claims. See,
e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y.
Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150
(E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist.
LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544
(W.D.N.Y. 2002).  A minority of courts in this Circuit have denied such petitions
when they do not raise even a colorable federal claim.  See Hernandez v. Lord,
No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000)
(discussing cases applying this standard) (internal quotation marks omitted).
Under either of these standards, Petitioner's claims are meritless.

virtually unchallengeable"); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."), cert. denied, 484 U.S. 958 (1987); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir.1997) ("[T]he tactical decision of whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation."), cert. denied, 522 U.S. 846 (1997). This Court cannot find that defense counsel's performance was constitutionally deficient and that, but for, counsel's allegedly deficient performance, there is a reasonable probability that the outcome of Petitioner's trial would have been different.

The record reflects that defense counsel effectively challenged the prosecution's ballistics evidence on cross-examination. On direct examination, the prosecution's ballistics expert testified that he tested four fired cartridge casings found at the scene of crime. According to him, these four fired cartridge cases "were fired .22 long or long rifle cartridge cases." T.T. 447. On cross-examination, defense counsel elicited information from the prosecution's expert that numerous types of guns could have fired the bullets that struck the victim. Defense counsel employed a pointed line of questioning which culminated in

an acknowledgment from the prosecution's expert that "there are numerous makes and models of firearms with characteristics similar to that demonstrated by the fired bullets that [he] examined." T.T. 461.

Moreover, Petitioner was charged under a theory of accessorial liability.  Expert testimony that there was only one shooter would have had little, if any, evidentiary value given that Petitioner was present when the crime occurred and that two types of ammunition (.22 caliber and .45 caliber ammunition) were recovered from the scene of the crime.

Accordingly, Petitioner has failed to demonstrate that counsel's decision not to call a ballistics expert was objectively unreasonable under the circumstances and that, but for, counsel's alleged error there is a reasonable probability that the outcome of his trial would have been different.  This portion of Petitioner's ineffective assistance of counsel claim is meritless and is therefore dismissed on that basis.

In sum, Petitioner's ineffective assistance of counsel claim is meritless, provides no basis for habeas relief, and is therefore dismissed in its entirety.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to

make "a substantial showing of a denial of a constitutional right,"
28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate
of appealability. See, e.g., <u>Lucidore v. New York State Div. of
Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also
hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any
appeal from this judgment would not be taken in good faith and
therefore denies leave to appeal as a poor person.  <u>Coppedge v.
United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's
Office, United States District Court, Western District of New York,
within thirty (30) days of the date of judgment in this action.
Requests to proceed on appeal as a poor person must be filed with
United States Court of Appeals for the Second Circuit in accordance
with the requirements of Rule 24 of the Federal Rules of Appellate
Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    December 28, 2011
          Rochester, New York